STOKES *vs.* KNARR.

APPEAL FROM CIRCUIT COURT, DODGE COUNTY

Heard January 13th.]                                    [Decided June 4, 1860.

*Equity—Judgment—Fees—Justice—Certiorari.*

Courts of equity will not injoin a judgment merely for a defect of jurisdiction in the court in which it is rendered. They only interfere to prevent injustice.

Where a party can say nothing against the justice of a judgment, equity will not interfere, but leave him to contend against it at law, as best he can.

The fees of the witnesses of the party against whom the judgment is rendered should not be included in the judgment; and if such costs are taxed, the remedy is not by resort to a court of equity, but by appeal or certiorari.

A common law writ of certiorari would lie to reverse a judgment entered by a justice of the peace for the fees of a party's own witnesses; also where a justice or other inferior tribunal has exceeded its jurisdiction.

This was an action to vacate a judgment entered by a justice of the peace in favor of the defendant against the plaintiff, and to restrain the collection of the same. The complaint showed that on the 9th of August, 1858, Knarr procured a summons from the justice which was duly served on this plaintiff, an issue was made and a trial by jury had on the 2d of September, and verdict for $100 rendered in favor of Knarr. The verdict was rendered at 2 o'clock, A. M., on the

3d, but the justice made no minute of the verdict, and did not enter a judgment on the same, or tax the costs.at the time, but adjourned the court.    On the next day he taxed the costs and entered the judgment for $100 damages and $57,84 costs. The complaint then alleged that the justice corruptly colluded with Knarr to injure and defraud this plaintiff by taxing the fees for summoning, and attendance of his own witnesses, making the same a part of the amount of the judgment.    A transcript of this judgment was filed in the office of the clerk of the circuit court of Dodge county, and the same became a lien upon the lands of this plaintiff, and a cloud upon his title.    On this complaint and sustaining affidavits an injunction order was granted.    The answer put the action at issue.

On the trial of the cause the defendant objected to the introduction of any evidence on the ground that the complaint did not state facts sufficient to constitute an equitable cause of action, and because the plaintiff had mistaken his remedy. This objection was sustained by the circuit judge.    And judgment was given dismissing the complaint and dissolving the injunction.    From which this appeal is taken.

*Smith & Ordway* for the appellant, upon the point that the taxation was a judicial act, and both parties had the right to be heard, cited *Supervisors of Onondaga vs. Biggs*, 2 Den., 3 ; *Sibley vs. Howard*, 3 id., 72 ; R. S., 690, § 159.    The judgment must be fully rendered within the time appointed by statute or it is void, *Watson vs. Davis*, 19 Wend., 371 ; *Young vs. Rummel*, 5 Hill, 600 ; R. S., 680, § 93 ; id., 690, § 160 ; *Seaman vs. Ward*, 1 Hilton, 52 ; *Friesman vs. P. R. R. Co.*, id., 300.    A court of equity has cognizance of an action brought to set aside a judgment not only irregular but void.    2 W. & T. Lead. Ca., pt. 2, 109 ; *Dotson vs. Pearce*, 2 Kern., 156 ; *Shottenkirk vs. Wheeler*, 3 J. C. R., 275 ; *Lucas vs. Maul*, 12 S. & M., 157 ; *Garlick vs. McArthur*, 6 Wis., 450 ; Willard's Eq., 163 ; *Thompson vs. Graham*, 1 Paige ; *Merritt vs. Baldwin*, 6 Wis., 439 ; *Sheldon vs. Fortescue*, 3 P. Wms., 111 ; *Munsell vs. Munsell*, 3 B. C. C., 74 ; Willard's Eq., 163.

*Enos & Hall* for the respondent, cited to the same points ; *Lansing vs. Eddy*, 1 J. C. R., 49 ; *Foster vs. Wood*, 6 id., 87 ; *Duncan vs. Lyon*, 3 id., 357 ; *De Riemer vs. Cantillon*, 4 id., 85 ; *Hawley vs. Mancius*, 7 id., 174 ; Story's Eq. Jur., § 895, '6 & '7 ; Willard's Eq., 160, 162, 164, 357 ; *Martin vs. Hood*,

8 John, 44; Cow. & H. notes 825; 1 Stark. Ev., 284; Rev. S., 722, § 9; 18 N. Y. R., 520.

*By the Court*, PAINE, J. We do not deem it necessary to decide whether the justice of the peace lost jurisdiction of the case and power to enter any judgment, by neglecting to make any minute of the verdict, or to enter it in his docket until the day after it was received. It may be conceded for the purpose of this case that he did, and we still think it does not follow that a court of equity will interfere to injoin the judgment. Those courts do not interfere merely for a defect of jurisdiction in the court where the judgment is rendered. 2 Story Eq., Jur., § 898. On the contrary, they interfere only to prevent injustice. And if a party can say nothing against the justice of a judgment, can give no reason why in equity he ought not not to pay it, a court of equity will not interfere, but will leave him to contend against it at law, in the best way he can. Here jurisdiction was once properly acquired, a trial was had, and a verdict rendered by the jury. Against the justice of this verdict the plaintiff alleges nothing, and it must therefore be assumed to be just, and that the plaintiff ought to pay it. Even if the justice lost jurisdiction, therefore, by neglect to enter judgment till the next day, this alone, is not a sufficient reason for an injunction.

Upon the other branch of the case we have had more doubt. The plaintiff alleges that, the justice corruptly colluding with the opposite party, and with intent to defraud him, taxed against him the fees of his own witnesses, which the justice knew had already been paid. It seems somewhat difficult to suppose that the justice or the party could really expect to defraud the plaintiff by taxing against him these costs illegally. For they must have known that he could certainly relieve himself from them by an appeal. But as it is so alleged in the complaint, though in somewhat general

terms, we must as the case is presented, assume such to have been the fact. The only allegation by which Knarr is implicated in the wrong, is that the justice "corruptly colluding" with him taxed the costs, &c. There may be some question whether this amounts to a sufficient allegation of fraud by him in procuring the wrong to be done. And if not, the question would then be whether an allegation that a judicial officer corruptly renders an illegal judgment, without being imposed on, by any fraud of the party, is sufficient to justify a court of equity, in inquiring into his motives, and if found that he corruptly rendered an illegal judgment, interfering by injunction. It may well be doubted whether such an inquiry should be permitted; but we shall not determine this point, as we shall assume the allegations to be sufficient to implicate Knarr, in the procurement of the illegal taxation. And if a party resorts to fraud in procuring a judgment, we do not think the fact that a judicial officer becomes a voluntary instrument in that fraud, should prevent the injured party, from resorting to whatever remedy he might otherwise have.

But looking at it in this light, we still think that a court of equity should not interfere. The plaintiff makes no offer to pay the amount of the verdict, or the properly taxable costs, which in equity he ought to pay. But even if the alleged fraud should be a sufficient reason for refusing to apply the maxim, that he who seeks equity should do equity, yet we think the plaintiff had a remedy at law, by means of a common law certiorari. It is true this writ reaches only defects upon the record, and that it is generally resorted to for the purpose of preventing inferior tribunals from exceeding their jurisdiction; but it is not confined to cases where there is an entire want of jurisdiction, but may be resorted to where, having jurisdiction of a proceeding, those tribunals make an order or judgment which exceeds their powers; and we think such was the case here. The magistrate had

authority only to tax the costs of the prevailing party. He had no authority whatever to tax the fees of the defendant's witnesses. To do so was an excess of power, as much so as it would have been for him to have taxed in favor of the plaintiff, such sum as the defendant had paid his counsel. It was not a mere error in judgment, in taxing items which by law he might tax; but it was assuming power to create new taxable items, and giving to the plaintiff the costs which the defendant had paid his own witnesses. This was an exercise of power which the law did not give him, as by the statute he is required to enter in his docket the fees taxed for each person separately, and the names of each witness, and for which party called. The record shows the wrong. And this could have been corrected by a common law certiorari. *The People vs. Williamson*, 13 Ill., 660; *Doolittle vs. R. R. Co.*, 14 id., 381. The taxing of costs being a judicial act, it comes within the rule as laid down in the *matter of Mount Morris Square*, 2 Hill, 14.

As the plaintiff, therefore, had a remedy at law, this is a sufficient reason why a court of equity should not interpose its extraordinary powers to remedy an illegal or fraudulent taxation of costs in a justice's court. See authorities cited in chap. 17, 3 Graham & Waterman on New Trials.

For these reasons, the judgment of the court below is affirmed, with costs.